UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

RONALD JORDAN,                          )
                                        )
                Plaintiff,              )
                                        )
        v.                              )          No. 4:21-CV-1456-JCH
                                        )
JAMES H. COFFMAN, et al.,               )
                                        )
                Defendants.             )

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of plaintiff Ronald Jordan, a prisoner, for leave to commence this civil action without prepaying fees or costs. Having reviewed the motion and the financial information submitted in support, the Court has determined to grant the motion, and assess an initial partial filing fee of $128.33. Additionally, for the reasons discussed below, the Court will partially dismiss the complaint, and direct the Clerk to effect service of process upon defendant Robert Savage.

## 28 U.S.C. § 1915(b)(1)

 Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to his account. 28 U.S.C. § 1915(b)(2). The

agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the account exceeds $10.00, until the filing fee is fully paid.  *Id.*

In support of the instant motion, plaintiff submitted an inmate account statement showing an average monthly deposit of $641.66, and an average monthly balance of $374.36. The Court will therefore assess an initial partial filing fee of $128.33, which is twenty percent of plaintiff's average monthly deposit.

### Legal Standard on Initial Review

This Court is required to review a complaint filed *in forma pauperis*, and must dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S at 556). Although a plaintiff need not allege facts in painstaking detail, the facts alleged "must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must assume the veracity of well-pleaded facts, but need not accept as true "[t]hreadbare

recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly,* 550 U.S. at 555).

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even *pro se* complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, nor are they required to interpret procedural rules so as to excuse the mistakes of those who proceed without counsel. *See McNeil v. United States,* 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff is a frequent *pro se* and *in forma pauperis* litigator. He initiated this action on December 13, 2021 by filing a thirty-page complaint to assert claims related to his confinement at the Potosi Correctional Center ("PCC").[1]  Plaintiff filed the complaint pursuant to 42 U.S.C. § 1983 against James H. Coffman, Steve Martin, Anne L. Precythe, Robert Savage, Paul Blair, and Jason Lewis. Plaintiff identifies all of the defendants as Missouri Department of Corrections ("MDOC") employees, and sues them in their individual capacities.

During the time relevant to plaintiff's claims, he worked as a welder in the PCC's Chair Factory (also "Factory"), and Coffman worked as the Factory supervisor. The Factory is operated by a MDOC program called Missouri Vocational Enterprises ("MVE"), and Martin is the

---

[1] On March 8, 2022, plaintiff filed a notice of change of address with the Court in which he states he is currently incarcerated in the Eastern Reception, Diagnostic and Correctional Center ("ERDCC").

Administrator of the MVE. Precythe is the Director of the MDOC, and Lewis is the MDOC Deputy Division Director. Blair is the PCC Warden, and Savage is a PCC Grievance Officer.

Condensed and summarized, plaintiff claims Coffman subjected him to involuntary servitude in violation of his Thirteenth Amendment rights, violated his Fourteenth Amendment rights, abused his authority, and violated Missouri law. Plaintiff claims Savage threatened him with retaliatory transfer after he filed an IRR to complain about Coffman, and later failed to properly process two reprisal grievances. For the most part, plaintiff's claims against the remaining defendants are based upon their supervisory and/or administrative roles.   Attached   to   the complaint are numerous exhibits, including copies of correspondence and grievance documents referenced in the complaint, and information about Missouri law and MDOC policies and procedures. Plaintiff's claims and supporting allegations are as follows.

On three occasions in 2020, Coffman brought auto parts he owned to the Factory, and directed offender Factory workers to work on them. The first occasion was in early March 2020, when Coffman brought his truck door and tailgate to the Factory and "directed offender Factory workers" to work on them. (ECF No. 1 at 5). Plaintiff does not allege that Coffman directed him to work on the truck door or tailgate.

In mid-March of 2020, Coffman brought his truck bed to the Factory, and "directed offender Factory workers (including plaintiff) to do the extensive and various aspects of work towards the repairing, restoring and painting of said truck-bed." *Id.* Coffman directed plaintiff to help with the work on the truck bed on "at least four occasions, between the months of April and May 2020." *Id.* It is apparent that plaintiff was directed to do the work during his normal Factory hours. Plaintiff writes:

4

11. On the first occasion, plaintiff was on his way to his welding station when defendant Coffman called out to plaintiff and told plaintiff he wanted plaintiff to help with the work on the truck-bed.

12. Plaintiff responded to defendant Coffman informing him that he was about to weld up some chairs that were in route to him.

13. At that, defendant Coffman told plaintiff, no, you're working on the truck-bed today.

14. Without a word, plaintiff complied, reporting to the area where the truck bed was, to assist another Factory offender worker who was already there with the work.

15. Within a short while thereafter, defendant Coffman told plaintiff and the other offender worker to come into the Manager's office (who did not come in that day), where defendant Coffman had plaintiff and the other offender worker watch on the office computer, a video on how to get "dents" out of a truck-bed.

16. At the end of that work day, the first time defendant Coffman directed plaintiff to work on his truck-bed, defendant Coffman asked plaintiff sarcastically and with an arrogant grin; how did plaintiff like working on the truck-bed.

17. Defendant Coffman likely deduced that plaintiff did not like working on his truck-bed; only because plaintiff knew that it had nothing to do with official MVE business, and was just free labor for defendant Coffman.

18. Defendant Coffman's truck-bed remained in the Factory for 11 or 12 weeks being worked on by Factory offender workers before it was finally completed and removed from the Factory on June 5, 2020.

*Id.* at 5-6.

Plaintiff does not allege he attempted to refuse the work, nor does he allege Coffman threatened him or did anything to make him believe he would be punished for refusing. Nevertheless, he alleges he had no choice. He alleges the work benefited only Coffman, did not benefit the State of Missouri, the MDOC, or the MVE, and was not in the interests of Missouri taxpayers. Plaintiff claims Coffman's actions violated Missouri law, "violated plaintiff's constitutional rights not to be subjected to involuntary servitude and to due process of law," and amounted to an abuse of authority. *Id.* at 7. Plaintiff wrote to Lewis on June 5, 2020 and to

Precythe on June 22, 2020 to put them "on notice" that Coffman had "abused his authority and violated a Missouri statute." *Id.* Plaintiff received no response, which "had the effect of conveying a negative and disturbing message to plaintiff, i.e., that they did not want to hear it." *Id.*

On September 8, 2020, Coffman brought his truck motor to the Factory, and "directed offender Factory workers to do the work of dissembling, restoring, rebuilding and painting said truck motor." *Id.* at 8. Plaintiff does not allege that Coffman directed him to work on the truck motor. Plaintiff complains that Coffman remarked that the offenders were saving him $2,000, and he claims Coffman violated department policies by using State-owned tools and equipment. On September 25, 2020, plaintiff wrote to Martin about Coffman's "abuse of authority and ongoing illegal actions," and after receiving no response, sent a follow-up letter five days later. *Id.* Plaintiff does not specify the particular alleged misconduct he described in the letters, but he does allege that in spite of the letters, the work on Coffman's truck motor continued until November 10, 2020, at which time Coffman used a forklift to remove it from the Factory.

Plaintiff wrote to Martin again on November 17, 2020 about Coffman's "illegal use of offender labor relating to the allowed completion of the work offenders did on defendant Coffman's truck motor," but Martin never responded. *Id.* at 8. Plaintiff speculates that Martin wanted to "sweep the matter under the rug," and "either authorized or approved defendant Coffman's illegal and unconstitutional use of offender labor for his own personal benefit or gain." *Id.* at 9.

On October 29, 2020, plaintiff submitted to Precythe an "Abuse Report" "pursuant to Missouri statute § 217.410 Abuse of offender," in an attempt to "bring an end to defendant Coffman's abuse of authority and abuse of offender labor." *Id.* at 9. Precythe failed to respond, which plaintiff believes violated Missouri law. On December 9, 2020, plaintiff filed another Abuse

6

Report, but Precythe again failed to respond. Plaintiff speculates that Precythe's failure to respond to the two Abuse Reports and to the June 22, 2000 letter mean that she "has either authorized or approved defendant Coffman's illegal and unconstitutional use of offender labor, or otherwise condoned it." *Id.* at 10.

On January 5, 2021, plaintiff submitted an Informal Resolution Request ("IRR") to his caseworker, Nicole Snyder. In the IRR, plaintiff claimed that Coffman violated Missouri law and MDOC policies. Plaintiff and Snyder met the following day to discuss the IRR, but the matter could not be resolved by discussion. Plaintiff signed off on the IRR to that effect.

On January 7, 2021, plaintiff was summoned to Savage's office. Upon entering, plaintiff saw his IRR sitting on Savage's desk. Plaintiff alleges it was irregular for Savage to be involved in the grievance process at that stage. Savage began questioning plaintiff about the IRR. Plaintiff writes:

> 57. There in his office, defendant Savage began to ask plaintiff a series of questions. Plaintiff responded by asking defendant Savage was this about plaintiff's IRR that was on his desk, and defendant Savage stated that it was.
>
> 58. At that time plaintiff called to defendant Savage's attention that plaintiff had already noted on the IRR the day before that said IRR could not be resolved by discussion, but defendant Savage persisted with the questions about the IRR and its content.
>
> 59. Defendant Savage asked plaintiff; what did plaintiff expect to get from the IRR.
>
> 60. Defendant Savage asked plaintiff; what do you think the Director is going to do.
>
> 61. To both questions plaintiff remained silent.
>
> 62. Defendant Savage, in a hostile tone, then went on to make a number of comments about what plaintiff stated in the IRR: that plaintiff was wrong in his thinking as to what was stated therein as it relates to defendant Coffman; inferring that plaintiff was wrong for filing the IRR.

63. At that point, noting defendant Savage's hostility and plaintiff's desire to remove himself from that situation, plaintiff stated to defendant Savage that he did not wish to debate or argue with defendant Savage about the IRR: and that if plaintiff's IRR is so off and baseless then just deny it, instead of pressuring plaintiff to drop it.

64. To that, defendant Savage asked plaintiff in a heightened tone of hostility; "do you want to stay here?"

65. This last remark/question by defendant Savage was an apparent threat to plaintiff, that if plaintiff did not drop his IRR, plaintiff would be transferred.

66. When plaintiff remained firm in his position to let the IRR proceed, defendant Savage became angry and told plaintiff to leave his office. Plaintiff readily complied.

67. Defendant Savage wanting to see plaintiff in his office was merely an attempt to convince, pressure, and intimidate plaintiff into dropping his IRR against defendant Coffman.

*Id.* at 11-12.

Next, plaintiff alleges that before he went to Savage's office, he was in the Factory and saw Coffman answer the telephone. Plaintiff did not know who the caller was. Plaintiff heard Coffman say, "no, he's still here, we're still stripping out." *Id.* at 12. Plaintiff describes nothing else about the telephone call, but he claims the caller was Savage, and that Savage and Coffman were talking about him and conspiring to retaliate against him for filing the IRR.

Plaintiff later wrote to Blair to complain about Savage's alleged threat, and to ask Blair to ensure there would be no further attempts to pressure him to drop his IRR. On February 10, 2021, Blair responded by telling plaintiff that if he was dissatisfied with the outcome of the IRR, he could proceed to the next stage of the grievance process. Plaintiff claims Blair failed to hold Savage accountable, and failed to supervise and train him. Plaintiff does not allege that Savage or anyone else made further attempts to pressure him to drop his IRR.

On or about January 11, 2021, plaintiff's IRR against Coffman "was denied in a misleading adverse decision." *Id.* at 13. Plaintiff attached a copy of the IRR response to the complaint. *See* (ECF No. 1-1 at 9). The response provides: "The findings are the MVE department works on items for any state employee. This has been done on several occasions. MVE also utilizes the computer to look up the best methods that can be used when pertaining to a project. This is part of job skills training." *Id.*

On January 15, 2021, plaintiff proceeded to the next stage of the prison grievance procedure by filing a Grievance, which was subsequently denied in a "misleading adverse decision." (ECF No. 1 at 15). Plaintiff attached a copy of the Grievance Response to the complaint. *See* (ECF No. 1-1 at 22). The response provides:

> Information submitted to this review indicates this restoration project was approved by the PCC MVE Manager to develop job skills. Your complaint references learning processes that are normal procedure for MVE for both agency and employee sales. It is noted this complaint was not submitted in a timely manner and your right to do so had expired at time of filing. Grievance Denied.

*Id.* On February 24, plaintiff proceeded to the next stage of the prison grievance process by filing a Grievance Appeal.

Next, plaintiff describes filing two "reprisal grievances," one against Savage and one against Coffman, after he "concluded that defendant Savage independently retaliated against him, and that both defendant Savage and defendant Coffman conspired to retaliate against plaintiff for engaging in protected activity." (ECF No. 1 at 13). Plaintiff asked Snyder, his caseworker, to give him two reprisal grievance forms, but she declined and told him his "claim did not meet the definition of reprisal." *Id.* Plaintiff obtained the forms elsewhere, and on February 2, 2021 took them to Snyder and asked her to notarize them. Snyder refused on the basis that notarization was unnecessary.

9

Plaintiff had the reprisal grievances notarized by someone else, and submitted them to Savage. Plaintiff asked Savage to provide him with tracking numbers, but Savage never did. On April 1, 2021, plaintiff received "an unofficial letter" from Lewis dated March 4, 2021 "regarding plaintiff's reprisal grievance against defendant Savage that was only partially addressed, in the negative, and nary a word about plaintiff's reprisal grievance against Coffman." *Id.* at 15. Attached to the complaint is a copy of Lewis's letter. It provides, in relevant part:

> Your complaint is regarding claims Corrections Case Manager II Robert Savage was violating Offender Grievance Procedure. You claim you were  questioned regarding Informal Resolution Request PCC-21-9 before it reached the Offender Grievance level. Be advised, evidence of reprisal for your participation in the grievance process has not been found. I am returning your 'reprisal appeal' to the PCC grievance officer so you may follow the normal grievance process in filing this complaint.

(ECF No. 1-1 at 28). Plaintiff wrote to Lewis to complain about the "shortcomings" of his letter, but received no response. Plaintiff describes occasions on which other reprisal grievances he filed were addressed in accordance with the proper procedure.

Plaintiff obviously believes Savage and Lewis erred by failing to determine that his complaints showed evidence of reprisal. However, he characterizes his claims against Savage and Lewis as claims that they prevented him from exercising his constitutional right to file grievances. For example, he avers that Savage "never really or officially filed and processed" the reprisal grievances; he speculates that Lewis's March 4, 2021 letter was "unmistakably an attempt by defendant Lewis to deceive plaintiff into believing" that Savage had officially filed the reprisal grievances; and he claims the two therefore conspired to prevent him from filing grievances. *Id.* at 16-17.

On May 5, 2021, plaintiff filed an IRR against Savage to complain that Savage failed to process his two reprisal grievances. On June 2, 2021, the IRR was denied "based upon the

10

fraudulent premise that plaintiff's reprisal grievances were officially processed, and still no mention of plaintiff's reprisal grievance against defendant Coffman." *Id.* at 18. Plaintiff attached a copy of the IRR Response to the complaint. It provides, in relevant part:

> I have reviewed and investigated your complaint. Your claims against Mr. Savage cannot be verified or substantiated. Mr. Savage performed his job duties appropriately, professionally, without bias and in accordance to policy. You submitted a complaint on 02/07/21 claiming to be a victim of reprisal. Your complaint was promptly submitted for administrative review. The Deputy Division Director determined that there was no evidence of reprisal. You received a copy of this decision on 03/04/21 and were advised to utilize the IRR process. Since no reprisal grievances were "filed," no tracking numbers were generated. Following the notification from the Deputy Division Director, you failed to utilize the "normal grievance process" as instructed by Jason Lewis, DDD.

(ECF No. 1-1 at 32).

The following day, plaintiff filed a Grievance. It was denied, and plaintiff filed a Grievance Appeal. Plaintiff writes: "There has been a concerted effort to shield defendant Coffman, and then defendant Savage, from accountability for violating plaintiff's civil rights, amounting to an elaborate cover-up, bordering on corruption, and rendering the established Grievance Procedure essentially meaningless." (ECF No. 1 at 18).

Plaintiff seeks a declaratory judgment that Coffman subjected him to involuntary servitude in violation of his rights secured by the Thirteenth and Fourteenth Amendments. He states without support that the work Coffman directed him to perform exceeded the bounds permitted by the Thirteenth Amendment, and violated Missouri law. He seeks an injunction ordering Savage and Blair to officially file and process his reprisal grievances in accordance with normal prison procedures. Plaintiff seeks compensatory damages against Coffman for subjecting him to involuntary servitude, and against Martin for failing to train and/or supervise Coffman. He seeks damages against Precythe for policy decisions that led to Coffman's unconstitutional acts and for failing to follow Missouri law, and for failing to supervise/train Lewis. He seeks damages against

Savage "for his retaliatory threat to plaintiff of transfer for plaintiff's use of the prison grievance procedure, as it relates to plaintiff's complaint against defendant Coffman." *Id.* at 23. He also seeks damages against Savage for failing to file the reprisal grievances, and against Savage and Coffman for conspiring to threaten him. Plaintiff seeks damages against Blair for failing to train/supervise Savage, and against Lewis for ignoring Savage's failure to file the reprisal grievances and conspiring with him.

**Discussion**

Plaintiff filed the complaint pursuant to 42 U.S.C. § 1983, which was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Department of Social Services*, 436 U.S. 658, 685 (1978). Section 1983 provides no substantive rights; it merely provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994) (Section 1983 "merely provides a method for vindicating federal rights elsewhere conferred"). To state a claim under 42 U.S.C. § 1983, a plaintiff must establish: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation of that right was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

**A. Defendant Coffman**

The Court first considers plaintiff's claim that Coffman violated his Thirteenth Amendment right to be free from involuntary servitude. By its terms, § 1983 can serve as the procedural vehicle for plaintiff to bring a Thirteenth Amendment claim against Coffman, a state actor. *See Ray v. Mabry*, 556 F.2d 881, 881–82 (8th Cir. 1977) (per curiam) (discussing a Thirteenth Amendment claim brought under § 1983). In support of this claim, plaintiff alleges that in mid-March of 2020,

12

Coffman brought his Ford truck bed to the Factory, and "directed offender Factory workers (including plaintiff)" to work on it. (ECF No. 1 at 5). Plaintiff alleges he worked on the truck bed on at least four occasions in April and May of 2020.

Plaintiff also alleges that on two other occasions, Coffman brought a truck door, tailgate, and motor to the Factory, and "directed offender Factory workers" to work on them. *Id.* at 5, 8. Plaintiff does not allege that Coffman directed him to work on the truck door, tailgate, or motor, or that he ever performed such work. Therefore, to the extent plaintiff seeks to bring claims against Coffman for directing others to work on the truck door, tailgate and motor, such claims are subject to dismissal. Plaintiff lacks standing to bring claims on behalf of others. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) (stating that to satisfy the standing requirement, a plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties"). Further, while federal law authorizes plaintiff to plead and conduct his own case personally, 28 U.S.C. § 1654, he is not a licensed attorney and therefore may not represent other individuals in federal court. *See Lewis v. Lenc–Smith Mfg. Co.*, 784 F.2d 829, 830 (7th Cir. 1986).

The Court now considers plaintiff's claim that Coffman subjected him to involuntary servitude, in violation of the Thirteenth Amendment, by directing him to work on the truck bed on at least four occasions in April and May of 2020. It is well settled that compelling prison inmates to work, even without pay, does not contravene the Thirteenth Amendment. *Ray*, 556 F.2d at 882. In fact, the Thirteenth Amendment specifically countenances forced labor during incarceration that was imposed as punishment for a crime. It provides, in relevant part, "[n]either slavery nor involuntary servitude, *except as a punishment for crime whereof the party shall have been duly convicted*, shall exist within the United States, or any place subject to their jurisdiction." U.S. CONST. amend. XIII, § 1 (emphasis added).

13

In support of his claim, in the section of the complaint in which plaintiff describes the relief he seeks from the Court, he asks the Court to issue a declaratory judgment stating that Coffman violated his Thirteenth Amendment rights because working on the truck bed went "beyond the bounds permitted by the Thirteenth Amendment." (ECF No. 1 at 22).  Plaintiff does not allege that being required to work on State-owned property in the Factory violated his Thirteenth Amendment rights, he does not allege he was required to work on the truck bed outside of his usual Factory hours, he does not allege Coffman directed him to work on the truck bed to offset any sort of debt or obligation, and he does not allege he was not compensated for the time he spent in the Factory working on the truck bed.  Instead, plaintiff asserts that because Coffman owned the truck bed, working on it in the Factory exceeded the bounds of the Thirteenth Amendment. Plaintiff does not identify, nor is the Court aware, of any authority establishing such an exception to the Eighth Circuit's holding in *Ray v. Mabry*. Additionally, other United States Courts of Appeals have rejected similar assertions, even in situations where inmates were required to work on private property without pay.

In *Murray v. Mississippi Dept. of Corrections*, 911 F.2d 1167 (5th Cir. 1990), the Fifth Circuit declined to create a private property exception to its prior holdings that, under the Thirteenth Amendment, an inmate may be compelled to work without pay despite the fact that state law prohibited inmates from working on private property. According to the *Murray* court:

> The thirteenth amendment specifically allows involuntary servitude as punishment after conviction of a crime . . . Furthermore, we can find no basis from which to conclude that working an inmate on private property is any more violative of constitutional or civil rights than working inmates on public property. . . . We hold that an inmate is not entitled to damages for violation of his constitutional or civil rights on the basis that he was compelled to work on private property without pay.

*Id.* at 1168. *See also Ali v. Johnson*, 259 F.3d 317, 318 (5th Cir. 2001) (noting that *Murray* and other Fifth Circuit precedent established that "forcing inmates to work without pay, and

14

compelling them to work on private property without pay, do not violate the Thirteenth Amendment"); *Moody v. Baker*, 857 F.2d 256, 258 (5th Cir. 1988) ("a work assignment alone does not rise to a constitutional violation"); *Draper v. Rhay*, 315 F.2d 193, 197 (9th Cir. 1963) ("When a person is duly tried, convicted and sentenced in accordance with the law, no issue of peonage or involuntary servitude arises.").

Plaintiff also asserts that Coffman's actions violated Missouri law and prison regulations or policies. Even if true and applicable to plaintiff's situation, the terms of Missouri law and prison regulations or policies are irrelevant because the Thirteenth Amendment does not forbid requiring an inmate to work. *See Murray,* 911 F.2d at 1168 n 1 (determining that the plaintiff was not entitled to damages for violation of his constitutional or civil rights on the basis he was compelled to work on private property without pay, and that any violation of Mississippi law did not rise to the level of constitutional dimension); *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (citation omitted) (It is well established that there is no federal constitutional liberty interest in having prison officials follow prison regulations). The Court concludes that plaintiff's allegations fail to state a claim premised upon the Thirteenth Amendment. *See Mosby v. Mabry*, 697 F.2d 213, 215 (8th Cir. 1982) (citations omitted) (In order to prevail upon a section 1983 claim, it is essential to establish a clear violation of a constitutional right or other federally protected right).

Plaintiff also states in conclusory fashion that Coffman's actions deprived him of his right to due process, in violation of the Fourteenth Amendment. Liberally construing plaintiff's statement as a claim of unconstitutional deprivation of property or other fundamental right, plaintiff's claim warrants no relief. As a prisoner, plaintiff had no constitutional right to be paid for his labor. *See Manning v. Lockhart,* 623 F.2d 536, 538 (8th Cir. 1980) (citing *Sigler v. Lowrie*, 404 F.2d 659 (8th Cir. 1968)).

There are some circumstances in which prison work requirements can amount to cruel and unusual punishment, and therefore violate the Eighth Amendment. For example, an Eighth Amendment claim may be based upon allegations that a prisoner is forced to perform work that is beyond his strength, work that causes undue pain, or work that jeopardizes his life or health. *See Ray*, 556 F.2d at 882 (citations omitted). Here, however, plaintiff makes no attempt to establish that working on the truck bed posed any such dangers. Therefore, plaintiff's allegations cannot be interpreted to state an Eighth Amendment claim.

Plaintiff also claims Coffman conspired with Savage to threaten plaintiff with transfer for filing an IRR. To demonstrate the existence of a § 1983 conspiracy, a plaintiff must allege, among other things, a meeting of the minds among the conspirators "sufficient to support the conclusion that the defendants reached an agreement to deprive the plaintiff of constitutionally guaranteed rights." *Burton v. St. Louis Bd. of Police Comm'rs*, 731 F.3d 784, 798-99 (8th Cir. 2013).

Here, although plaintiff states Coffman and Savage conspired against him, he provides no factual basis to conclude there was a meeting of the minds between them. Plaintiff's assertion that Savage was the person who called Coffman on January 7, 2020, and that the two were talking about him and conspiring against him, is based solely upon plaintiff's own speculation. Even if the Court were to presume that the caller was Savage, and that Coffman told Savage plaintiff's whereabouts, that would be insufficient to plead the existence of a § 1983 conspiracy. *See Mendoza v. United States Immigr. & Customs Enf't*, 849 F.3d 408, 422 (8th Cir. 2017) (Mere cooperation between alleged conspirators is not evidence of specific facts that show a "meeting of the minds."). Allegations of conspiracy "must be pled with sufficient specificity and factual support." *Manis v. Sterling,* 862 F.2d 679, 681 (8th Cir. 1988) (internal citation omitted). Here, plaintiff's bare assertion of a conspiracy supported only by his own speculation is insufficient to state a § 1983

16

conspiracy claim. *See Iqbal*, 556 U.S. at 678 (to state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements").

For the foregoing reasons, the Court concludes that plaintiff has failed to state a claim upon which relief may be granted against Coffman. The Court will therefore dismiss Coffman from this action.

**B.     Defendant Savage**

Plaintiff claims Savage is liable to him for threatening him with transfer for filing an IRR. To prevail on a § 1983 claim for retaliation in violation of the First Amendment, plaintiff must demonstrate (1) that he engaged in a protected activity; (2) that the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) that the adverse action was motivated at least in part by the exercise of the protected activity. *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013) (citing *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)).  A threat alone can amount to adverse action if it is capable of deterring a person of ordinary firmness from engaging in protected activity. *Santiago,* 707 F.3d at 992-93 (internal citations omitted).

Plaintiff alleges he filed an IRR, which is protected First Amendment activity. *See id.* at 991 (citing *Haynes v. Stephenson*, 588 F.3d 1152, 1155-56 (8th Cir. 2009)). Plaintiff further alleges that after he filed the IRR, he was called into Savage's office to discuss it, which was out of the ordinary. Plaintiff further alleges that while in Savage's office, Savage questioned him about the IRR in a hostile or confrontational manner, and that when plaintiff tried to end the discussion, Savage said, "do you want to stay here," which plaintiff perceived as a threat to drop the IRR or be transferred. (ECF No. 1 at 11).

Indeed, plaintiff's allegations establish that the threat did not deter him from using the prison grievance procedure. However, because the "ordinary-firmness test" is objective, not subjective, the question is not whether plaintiff himself was deterred, but whether a prisoner of ordinary firmness would be. *Santiago,* 707 F.3d at 992 (quoting *Garcia v. City of Trenton,* 348 F.3d 726, 728 (8th Cir. 2003)). How plaintiff acted might be evidence of what a reasonable prisoner would have done, but it does not resolve the question at this stage of these proceedings. *See Garcia,* 348 F.3d at 728. The Court will allow plaintiff's First Amendment retaliation claim against Savage to proceed.

Plaintiff also claims Savage is liable to him for conspiring with Coffman to retaliate against him for filing the IRR. As discussed above, plaintiff's allegations that Coffman and Savage conspired against him are nothing more than bare assertions devoid of factual support, and do not state a viable claim of § 1983 conspiracy. *See Manis,* 862 F.2d at 681 (Allegations of conspiracy "must be pled with sufficient specificity and factual support."); *Iqbal*, 556 U.S. at 678 (to state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements").

Next, plaintiff seeks to hold Savage liable for failing to file and/or process his reprisal grievances in accordance with the prison's grievance procedure. He alleges Savage failed to provide him with tracking numbers, and he alleges the reprisal grievances were not addressed in accordance with the proper procedure like his earlier reprisal grievances were. These allegations do not state a claim of constitutional significance. Plaintiff's allegations do not establish that Savage, or any other defendant, prevented him from filing grievances altogether. Instead, they establish that because evidence of reprisal was not found, his complaints were not processed as reprisal grievances.

Plaintiff's allegations do not state a claim of constitutional significance. There is no federal constitutional right to a prison grievance procedure, and neither state law nor state policy creates one. Therefore, if a state elects to provide a grievance mechanism, violations thereof will not give rise to a § 1983 claim. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (a prison official's failure to process or investigate grievances is not actionable under § 1983; the grievance procedure is procedural right only and does not confer substantive right on inmate). Additionally, it is well established that there is no federal constitutional liberty interest in having prison officials follow prison regulations. *Phillips*, 320 F.3d at 847 (citation omitted). To the extent plaintiff claims he is entitled to relief because any defendant failed to find evidence of reprisal or denied relief on any grievance document, such allegations do not state a substantive constitutional claim. *See Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (citing *Buckley,* 997 F.2d at 495) (denial of a grievance does not give rise to a substantive constitutional claim). The Court concludes that plaintiff's allegations that Savage failed to file and/or process the two reprisal grievances, failed to follow a prison policy or regulation, or engaged in conspiracy, fail to state substantive constitutional claim.

### C.      Defendant Lewis

Plaintiff claims Lewis is liable to him because he failed to address or correct Coffman's wrongdoing. Government officials may not be held liable for unconstitutional conduct under a theory of *respondeat superior*. *Rogers v. King*, 885 F.3d 1118, 1122 (8th Cir. 2018). Individual liability under § 1983 may attach to a supervising officer if he directly participated in a constitutional violation, or if his failure to supervise and/or train a subordinate caused a constitutional deprivation. *Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997); *Andrews v. Fowler,* 98 F.3d 1069, 1078 (8th Cir. 1996). To establish liability for failure to supervise or train,

a plaintiff must show that the supervising officer: (1) received notice of a pattern of unconstitutional acts committed by subordinates; (2) demonstrated deliberate indifference to or tacit authorization of the unconstitutional acts; (3) failed to take sufficient remedial action; and (4) such failure proximately caused injury to plaintiff. *Otey*, 121 F.3d at 1155.

In this case, plaintiff has failed to demonstrate an underlying constitutional violation based on Coffman's conduct. His supervisory liability claim against Lewis therefore fails. *See Mendoza*, 849 F.3d at 420 (supervisory liability claims "automatically fail for lack of an underlying constitutional violation"); *Royster v. Nichols*, 698 F.3d 681, 692 (8th Cir. 2012) (without a constitutional violation by a subordinate, there can be no § 1983 liability for failure-to-train or failure-to-supervise); *Williams v. Davis*, 200 F.3d 538, 539 (8th Cir. 2000) ("Absent a constitutional violation, there [is] no basis for section 1983 liability on the part of [supervisors].").

Plaintiff also claims Lewis failed to properly address his reprisal grievances and conspired with Savage to prevent him from filing them, and failed to act in accordance with MDOC rules and policies. These claims also fail. A prison official's denial of a grievance, or failure to follow prison policy or procedure, does not state a viable First Amendment claim. *See Buckley,* 997 F.2d at 495; *Phillips,* 320 F.3d at 847. Finally, plaintiff offers only bare assertions of a conspiracy that are devoid of factual support, and insufficient to state a viable claim of § 1983 conspiracy. *See Manis,* 862 F.2d at 681 (Allegations of conspiracy "must be pled with sufficient specificity and factual support."); *Iqbal*, 556 U.S. at 678 (to state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements"). Lewis will be dismissed from this action.

**D.    Martin and Precythe**

20

Plaintiff claims Martin and Precythe are liable to him for Coffman's alleged constitutional violations, and he claims Precythe is liable to him for Lewis's alleged constitutional violations. As discussed above, plaintiff has failed to demonstrate an underlying constitutional violation on the part of Coffman or Lewis. There can therefore be no claim against Martin or Precythe for any policy decisions or any failure to remediate, train or supervise leading to a constitutional violation. *See Mendoza,* 849 F.3d at 420; *Royster*, 698 F.3d at 692; *Williams*, 200 F.3d at 539. Additionally, plaintiff's vague and conclusory allegations of an unconstitutional policy amount to legal conclusions that the Court is allowed to ignore. *See Wiles v. Capitol Indem. Corp*., 280 F.3d 868, 870 (8th Cir. 2002) ("While the court must accept allegations of fact as true ... the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations"). Martin and Precythe will be dismissed from this action.

### E.      Defendant Blair

Plaintiff claims Blair is liable to him for failing in his "statutory duty" to observe and train Savage to ensure Savage strictly followed "the established Offender Grievance Procedures in such a way that does not violate or infringe upon an offender's (plaintiff's) First Amendment rights," and he states Blair failed to properly train and/or supervise Savage. (ECF No. 1 at 23).  To the extent plaintiff alleges Blair denied an IRR or grievance, failed to address a grievance document in accordance with MDOC procedure, or failed to follow any other MDOC policy or rule, such allegations do not state a viable First Amendment claim or any other claim of constitutional dimension, as discussed above. *See Buckley,* 997 F.2d at 495; *Phillips,* 320 F.3d at 847. To the extent plaintiff seeks to hold Blair liable for the conduct of Savage or any other defendant that

does not rise to the level of a constitutional violation, such claims also fail as discussed above. *See Mendoza,* 849 F.3d at 420; *Royster*, 698 F.3d at 692; *Williams*, 200 F.3d at 539.

To the extent plaintiff seeks to hold Blair liable for Savage's alleged January 7, 2020 threat of retaliatory transfer, such claim fails. Plaintiff alleges Savage threatened him with transfer on a single occasion. He does not allege that Savage had previously engaged in a pattern of unconstitutional conduct, or that Blair knew or should have known of any such pattern. Instead, plaintiff points to a single isolated incident, and claims that supervisory liability should attach to Blair. That is insufficient. *See Howard v. Adkison*, 887 F.2d 134, 138 (8th Cir. 1989) ("[a] single incident, or a series of isolated incidents, usually provides an insufficient basis upon which to assign supervisory liability"); *see also Iqbal*, 556 U.S. at 678 (to state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements").

For all of the foregoing reasons, the Court will dismiss defendants James H. Coffman, Steve Martin, Anne L. Precythe, Paul Blair, and Jason Lewis from this action, and declines to exercise supplemental jurisdiction over any State-law claims plaintiff may seek to bring. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (if federal claims are dismissed before trial, remaining state claims should also be dismissed). The Court expresses no opinion of whether Missouri law gives plaintiff a private right of action, or whether plaintiff has a viable State-law claim. The Court will dismiss plaintiff's claims against Savage that are based upon conspiracy, upon any failure to file, process, and/or address grievances, or any failure to follow any prison policy, regulation, or procedure, and will require Savage to respond to the complaint as to plaintiff's First Amendment retaliation claim.

## F.    Motion to Appoint Counsel

Plaintiff has also filed a motion to appoint counsel. A *pro se* litigant has "neither a constitutional nor a statutory right to appointed counsel in civil cases." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018) (citing *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006)). A district court may appoint counsel in a civil case if it is "convinced that an indigent plaintiff has stated a non-frivolous claim . . . and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Id.* (citing *Johnson v. Williams,* 788 F.2d 1319, 1322 (8th Cir. 1986)). When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the factual complexity of the issues, the litigant's ability to investigate the facts and present his claims, the existence of conflicting testimony, and the complexity of the legal arguments. *Id.* (citing *Phillips*, 437 F.3d at 794).

In this case, there is no indication that plaintiff is incapable of investigating the facts or presenting his claims, and nothing in the instant motion or in the record before the Court indicates that the factual or legal issues are sufficiently complex to justify the appointment of counsel. Moreover, service of process has yet to occur and discovery has not begun, so there is no conflicting testimony. However, recognizing that circumstances may change, the Court will deny the motion for appointment of counsel without prejudice, and will entertain future such motions, if appropriate, as the case progresses.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion seeking leave to commence this action without prepaying fees or costs (ECF No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that, within thirty (30) days of the date of this order, plaintiff must pay an initial filing fee of $128.33. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison

registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's Motion to Appoint Counsel (ECF No. 4) is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that defendants James H. Coffman, Steve Martin, Anne L. Precythe, Paul Blair, and Jason Lewis are **DISMISSED** from this action.  A separate order of partial dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that plaintiff's claims against Robert Savage that are based upon conspiracy, upon any failure to file, process, and/or address grievances, or any failure to follow any prison policy, regulation or procedure are **DISMISSED**. A separate order of partial dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue upon the complaint, pursuant to the service agreement the Court maintains with the Missouri Attorney General's Office, as to Robert Savage in his individual capacity as to plaintiff's First Amendment retaliation claim.

Dated this 20th day of April, 2022.


/s/ Jean C. Hamilton
JEAN C. HAMILTON
UNITED STATES DISTRICT JUDGE