UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RONALD JORDAN, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 4:21-cv-01456-MTS |
| JAMES H. COFFMAN, *et al.*, | ) ) ) |
| Defendants. | ) ) |

## **MEMORANDUM AND ORDER**

Before the Court is Defendants Robert Savage and Paul Blair's Motion for Summary Judgment. Doc. [128]. These two Defendants are the sole remaining Defendants in this action under 42 U.S.C. § 1983. One First Amendment claim against each of them remains. For the reasons discussed herein, the Court will grant Defendants' Motion and enter Judgment in their favor.

**I.    Legal Standard**

Federal Rule of Civil Procedure 56 requires federal district courts to grant a party's motion for summary judgment if the party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the Supreme Court has explained, the main purpose of the summary judgment procedure "is to isolate and dispose of factually unsupported claims or defenses," with due regard being given to the rights of those opposing a claim or defense to demonstrate in the manner provided by Rule 56, prior to trial, that a claim or defense has no factual basis. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986); *accord Bedford v. Doe*, 880 F.3d

993, 996 (8th Cir. 2018).  After all, if a nonmoving party cannot assemble sufficient evidence to make out its claim, a trial would be pointless.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting); *see also Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc) (describing summary judgment as "a useful pretrial tool to determine whether any case . . . merits a trial"); Charles E. Clark, *The Summary Judgment*, 36 Minn. L. Rev. 567, 578 (1952) (explaining that a trial should not be "forced upon a litigant by one with no case at all").

On a motion for summary judgment, the movants—here, Defendants—bear the initial responsibility of informing the district court of the basis for their motion and must identify the portions of the record that they believe demonstrate the absence of a genuine dispute of material fact.  *Torgerson*, 643 F.3d at 1042; *Bedford*, 880 F.3d at 996.  Since the burden of persuasion at trial in this case would be on Plaintiff—the non-moving party here—Defendants may satisfy Rule 56's burden of production in one of two ways. Defendants may either produce evidence negating an essential element of Plaintiff's case, or they may show that Plaintiff does not have enough evidence of an essential element of his claims to carry his ultimate burden of persuasion at trial.  *Bedford*, 880 F.3d at 996; Fed. R. Civ. P. 56(c)(1).  Put differently, if Plaintiff must prove $X$ to prevail, then Defendants, here at the summary judgment stage, can either produce evidence that $X$ is not so, or Defendants may point out that Plaintiff lacks evidence[1] to prove $X$.  *Bedford*, 880

---

[1] "A moving party may not require the nonmoving party to produce evidence supporting its claim or defense simply by saying that the nonmoving party has no such evidence." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1105 (9th Cir. 2000); *accord Handeen v. Lemaire*, 112 F.3d 1339, 1346 (8th Cir. 1997) ("[E]ven when the non-movant bears the burden of proof at trial,

F.3d at 996; *Celotex*, 477 U.S. at 325 (making clear that "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case").

The "initial burden on the movant is 'far from stringent' and 'regularly discharged with ease.'" *Bedford*, 880 F.3d at 996 (quoting *St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 596 (8th Cir. 2001)). Once Defendants have satisfied it, Plaintiff "must respond by submitting evidentiary materials" of specific facts showing the presence of a genuine issue for trial. *Bedford*, 880 F.3d at 996 (quoting *Torgerson*, 643 F.3d at 1042). Plaintiff's response must do more than raise some abstract doubt about the material facts, *id.*, and he cannot rest on mere denials or allegations, *Gibson v. American Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012). Plaintiff must instead present enough evidence that a jury could reasonably find in his favor. *Id.*; *Bedford*, 880 F.3d at 996.

Accordingly, the Court must examine whether Defendants have satisfied their initial burden and, if so, whether Plaintiff sufficiently responded. In doing so, the Court will view the evidence and draw reasonable inferences in the light most favorable to Plaintiff, since he is the nonmoving party here. *Ryno v. City of Waynesville*, 58 F.4th 995, 1004 (8th Cir. 2023) ("Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issue of

---

simply filing a summary judgment motion does not immediately compel the party opposing the motion to come forward with evidence demonstrating material issues of fact as to every element of its case." (internal quotations and citation omitted)). Rather, a moving party must "point to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

material fact exists and the movant is entitled to judgment as a matter of law."); *Scott v. Harris*, 550 U.S. 372, 378 (2007) (explaining that when the parties' version of events differ, "courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion" (internal quotations and alterations omitted)).

## II.     Factual Background

Plaintiff Ronald Jordan is an inmate within the state of Missouri, who at the time of the events in question, was incarcerated at Potosi Correctional Center ("PCC"). On January 5, 2021, Plaintiff filed an informal resolution request ("IRR")—the first step in PCC's inmate grievance process—pertaining to PCC's workshop, where he was employed under the umbrella of Missouri Vocational Enterprises. In his IRR, Plaintiff objected that PCC employee James Coffman improperly used the labor and resources of the inmates in the workshop, in contravention of Missouri law, when Coffman brought in pieces of his personal truck needing repair in March of 2020. *See* Mo. Rev. Stat. § 217.125 ("No offender labor may be used for the profit, betterment or personal gain of any employee of the department."). Case Manager Nicole Snyder received Plaintiff's IRR and provided a copy to PCC employee Defendant Robert Savage, who formerly worked as a grievance officer and was providing guidance to Case Manager Snyder.

Defendant Savage then spoke with Plaintiff that same day and asked him why he filed the IRR so far past the fifteen-day filing window.[2] Their conversation also involved

---

[2] Plaintiff's Response to Defendants' Statement of Uncontroverted Material Facts rests largely on Plaintiff's unsworn declaration. Doc. [147-1]. For that reason, some of the facts which Plaintiff

- 4 -

some discussion about Plaintiff's longtime employment in the workshop. Doc. [130] ¶ 42; Doc. [147] at 5. Plaintiff claims that Defendant Savage asked him whether Plaintiff wanted "to stay here." Doc. [147] ¶¶ 35–37, 38. Plaintiff maintains that Defendant Savage meant this question as a threat to transfer Plaintiff from PCC; however, it is undisputed that Defendant Savage lacked the authority to transfer an inmate to another institution. Doc. [130] ¶ 44; Doc. [143-6] ¶ 44. It also is undisputed that Defendant Savage neither requested nor demanded that Plaintiff withdraw his IRR against Coffman.

On or around February 10, 2021, Plaintiff made Defendant Blair—the Warden of PCC—aware of the IRR at issue. Doc. [143-10]. Then, on February 28, 2022, Plaintiff was transferred from PCC to the Eastern Reception Diagnostic and Correctional Center ("ERDCC"). Doc. [147] ¶ 2. It is undisputed that Plaintiff's transfer was part of a "special transfer plan" in which forty inmates—including twenty total from PCC—would be transferred within Missouri correctional facilities. *Id.* ¶ 5. The transferred inmates included inmates at ERDCC who exhibited poor institutional adjustment or posed security concerns. *Id.* ¶ 6. In exchange for these inmates, incentive inmates—those exhibiting good behavior—were exchanged in an effort to allow inmates and recently hired employees at ERDCC to be successful. *Id.* ¶¶ 7–9. It is undisputed that, in enacting the special transfer plan, Defendant Blair tasked the Functional Unit Manager with identifying twenty "honor"

---

purports to dispute, like this one, are undisputed for purposes of this Motion. *See Webb v. Lakey*, 111 F.4th 939, 942 (8th Cir. 2024) (finding district court properly granted summary judgment where plaintiff opposing summary judgment "failed to present competent evidence to support a finding of retaliation" because he "submitted a declaration, but it was not signed under penalty of perjury, and it [wa]s therefore inadmissible"); Fed. R. Civ. P. 56(e)(2) (providing that when a party "fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion").

individuals from PCC for transfer. *Id.* ¶ 14. Thus, it is undisputed that Defendant Blair did not select Plaintiff for the special transfer plan. *Id.* ¶ 16.

**III.   Discussion**

Two claims remain in this § 1983 action: Plaintiff's claim against Defendant Savage for retaliation under the First Amendment by threatening Plaintiff with transfer and Plaintiff's claim against Defendant Blair for transferring Plaintiff from PCC to ERDCC. To establish his First Amendment retaliation claims, Plaintiff would be required to show that (1) he engaged in a protected activity, (2) that each Defendant took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) Plaintiff's exercise of his protected activity motivated the adverse action at least in part. *Spencer v. Jackson County*, 738 F.3d 907, 911 (8th Cir. 2013). The first element on both claims is not in dispute here. The United States Court of Appeals for the Eighth Circuit has held that an inmate's filing of a grievance "is [a] protected First Amendment activity." *Gonzalez v. Bendt*, 971 F.3d 742, 744–45 (8th Cir. 2020) (quoting *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007)). Defendants assert that Plaintiff's claims against each of them fail on the remaining elements. They have met their initial burden in their Motion for Summary Judgment showing as much. *See Bedford*, 880 F.3d at 996. The Court takes the claim against each Defendant in turn examining whether Plaintiff has presented enough evidence that a jury could reasonably find in his favor. *See id.*

1. <u>Defendant Savage</u>

Plaintiff maintains that Defendant Savage threatened to transfer Plaintiff to another institution when Defendant Savage asked whether Plaintiff "wanted to stay here." The

- 6 -

Court agrees with Defendant Savage that Plaintiff has failed to identify sufficient evidence in the record from which a reasonable jury could find that this statement amounted to an adverse action. In fact, the only evidence that Defendant Savage meant his question as a threat to transfer Plaintiff to another institution is Plaintiff's own statement that he construed the question that way. But a "plaintiff's unsupported belief . . . does not create a genuine issue of fact." *Taylor v. Miller*, 4:15-cv-0285-RWS, 2017 WL 513020, at *4 (E.D. Mo. Feb. 8, 2017).

All the surrounding circumstances suggest that Defendant Savage did not intend his question as a threat. First, what spurred the conversation at issue was a mere informal resolution request, the ordinarily unremarkable first step in PCC's inmate grievance process. Second, Plaintiff's informal request was not even against Defendant Savage; Plaintiff's IRR concerned Coffman. Next, it is undisputed that Defendant Savage neither asked nor demanded Plaintiff to withdraw his IRR against Coffman. And finally, Savage lacked the ability to transfer Plaintiff or any other inmate. On this record, a reasonable jury could not find that Defendant Savage's anodyne question was a threat to do something he lacked the ability to do—transfer Plaintiff to a different institution—if Plaintiff did not withdraw his informal request pertaining to a different employee.

Yet even if a reasonable jury could find that Defendant's question amounted to a threat and an adverse action, Defendant Savage asserts that Plaintiff cannot show that it was sufficiently chilling and that it therefore fails the ordinary-firmness test. The Court agrees. Defendant Savage's statement "simply [wa]s not sufficiently threatening to chill a person of ordinary firmness from continuing" to use PCC's grievance system. *See*

*Evenstad v. Herberg*, 994 F. Supp. 2d 995, 1001 (D. Minn. 2014); *see also Beatty v. Henshaw*, 826 F. App'x 561, 564 (7th Cir. 2020) (per curiam) (noting that "not [just] any threat will meet the threshold" to "support a chilling claim").[3]

The ordinary-firmness test is "designed to weed out trivial matters from those deserving the time of the courts as real and substantial violations of the First Amendment." *Santiago v. Blair*, 707 F.3d 984, 992 (8th Cir. 2013) (quoting *Garcia v. City of Trenton*, 348 F.3d 726, 728 (8th Cir. 2003)).  The test is "well established in the case law." *Id.*; *see also Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 479 (2022) (distinguishing between material and immaterial adverse actions and noting that "no one would think that a mere frown from a supervisor constitutes a sufficiently adverse action to give rise to an actionable First Amendment claim"); *cf. Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (holding Title VII's anti-retaliation provision—which prohibits an employer from taking action against an employee for bringing or aiding a Title VII charge—applies only when the retaliatory action is "materially adverse," meaning that it causes "significant" harm).

---

[3] The Eighth Circuit has noted that "'a threat of retaliation is sufficient *injury* if made in retaliation for an inmate's use of prison grievance procedures' to sustain a claim of First Amendment retaliation." *Santiago v. Blair*, 707 F.3d 984, 992 (8th Cir. 2013) (emphasis added) (quoting *Burgess v. Moore*, 39 F.3d 216, 218 (8th Cir. 1994)).  That statement makes clear that an inmate who alleges such a threat was made against him has *standing* to bring a First Amendment claim, *see Uzuegbunam v. Preczewski*, 592 U.S. 279, __, 141 S. Ct. 792, 796 (2021), but "it is crucial not to conflate Article III's requirement of injury in fact with a plaintiff's potential causes of action, for the concepts are not coextensive," *see Carlsen v. GameStop, Inc.*, 833 F.3d 903, 909 (8th Cir. 2016) (cleaned-up). *See also Longaker v. Bos. Sci. Corp.*, 715 F.3d 658, 663 (8th Cir. 2013) (Bye, J., concurring in part and dissenting in part) (opining that the court "confused the issue of [plaintiff's] standing to bring his . . . claim with the validity of the claim itself").

Here, Defendant has not pointed to any evidence showing that a person of ordinary firmness would be chilled by the stand-alone threat of transfer from PCC to another unidentified institution.  True, prison officials cannot transfer an inmate "in retaliation for the exercise of a constitutional right." *Goff v. Burton*, 7 F.3d 734, 737 (8th Cir. 1993); *see also Murphy v. Mo. Dep't of Corr.*, 769 F.2d 502, 503 (8th Cir. 1985) (per curiam) (explaining, in the context of a transfer from a medium-security facility to a maximum-security facility, that "prison officials do not have the discretion to punish an inmate for exercising his first amendment rights by transferring him to a different institution").  But every transfer—or threat of transfer—in retaliation for the exercise of constitutional rights is not necessarily an adverse action that would chill a person of ordinary firmness from continuing in the protected activity. *See Collazo v. Rozum*, 646 F. App'x 274, 276 (3d Cir. 2016) (per curiam) (affirming dismissal of inmate's retaliation claim where complaint "did not allege how the prison transfer was an adverse action, i.e. one that would be sufficient to deter a person of ordinary firmness from exercising his rights"); *Taek Sang Yoon v. Arnett*, 385 F. App'x 666, 668 (9th Cir. 2010) (per curiam) (affirming dismissal of inmate's retaliation claim where inmate "alleged no facts to establish that his transfer from one prison yard to another" was an adverse action); *see also Spencer*, 738 F.3d at 912 (noting intra-facility transfer "was an adverse action *because* D module housed younger and more violent offenders than H module" (emphasis added)).

Indeed, federal courts frequently have recognized that "[w]ithout some additional aggravating factor, such as relocation to a much more restrictive or dangerous environment, a transfer is not likely to deter a person of ordinary firmness from continuing to engage in

- 9 -

protected conduct." *Holleman v. Zatecky*, 951 F.3d 873, 882 (7th Cir. 2020) (Manion, J., for the Court, joined by Easterbrook & Barrett, JJ.); *see also, e.g.*, *Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) ("We have repeatedly held that transfer from one prison to another prison cannot rise to the level of an 'adverse action' because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights." (cleaned up)).

Here, Plaintiff has not pointed to evidence in the record that shows any aggravating factor.  He does not identify how a transfer would have had foreseeable, negative consequences to him or how it even would have been undesirable.  *See, e.g.*, *Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009) (threat to transfer prisoner far away from his family could be sufficiently chilling); *Morris v. Powell*, 449 F.3d 682, 687 (5th Cir. 2006) (transfer to "a more dangerous prison" could be sufficiently chilling); *Davis v. Boylan*, 670 F. App'x 435, 436 (8th Cir. 2016) (per curiam) (transfer to "housing with conditions that threatened [prisoner's] health" could be sufficiently chilling).

Not only did Plaintiff fail to identify anything in the record showing why transfer to another prison would chill a person of ordinary firmness from continuing to use PCC's grievance system, the only evidence in the record to which the Court has been pointed is the fact that Defendant Savage's threat did *not* chill Plaintiff himself from using the grievance process.  The record reflects that "in the face of" Defendant's alleged threat, Plaintiff "continued" to use the grievance system "on numerous occasions."  *See Naucke v. City of Park Hills*, 284 F.3d 923, 928 (8th Cir. 2002) (finding "offensive, unprofessional and inappropriate" comments made by members of the city council were insufficient to

- 10 -

deter a person of ordinary firmness from continuing to speak out while noting the comments did not deter plaintiff). While the ordinary-firmness test is "an objective one," "how [P]laintiff acted might be evidence of what a reasonable person would have done." *Garcia*, 348 F.3d at 729; *accord Jones v. Solomon*, 90 F.4th 198, 214 (4th Cir. 2024) (explaining a "plaintiff's actual response to the retaliatory conduct provides some evidence of the tendency of that conduct to chill First Amendment activity").

Finally, even if Defendant Savage's statement did amount to a threat that rose to the level of an adverse action that would chill a person of ordinary firmness, Defendant Savage maintains he is entitled to qualified immunity. The Court agrees. *See Beard v. Falkenrath*, 97 F.4th 1109, 1119 (8th Cir. 2024) (noting that the "final hurdle" for an inmate in a First Amendment retaliation claim is "overcoming qualified immunity"). "Under the doctrine of qualified immunity, a government official is immune from suit unless the complained of conduct violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Doby v. Hickerson*, 120 F.3d 111, 113 (8th Cir. 1997) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It is clearly established within the Eighth Circuit that threats of death by a correctional officer tasked with guarding a prisoner's segregated cell would chill a person of ordinary firmness from engaging in the inmate grievance process. *Santiago*, 707 F.3d at 992. But that case is miles away from this one. *See City of Tahlequah v. Bond*, 595 U.S. 9, 14 (2021) (per curiam) ("[A] reasonable officer could miss the connection between that case and this one.").

Plaintiff has not identified, and this Court has not located, any case clearly establishing that threatening to transfer an inmate from one institution to another

unspecified institution would chill a person of ordinary firmness from engaging in the prison grievance process.[4] *See Matson v. Hrabe*, 612 F. App'x 926, 930 (10th Cir. 2015) (finding inmate failed to show the "right to be free from a retaliatory transfer to another general-population unit in the same prison that has less favorable living conditions" was clearly established); *see also McKinney v. Rutenbar*, 2:14-cv-0220, 2016 WL 4144253, at *2 (W.D. Mich. Aug. 4, 2016) (finding it was not clearly established that a threat of prison transfer, standing alone, is sufficiently adverse to constitute prohibited retaliation). Defendant Savage is entitled to qualified immunity, and the Court will accordingly enter summary judgment in his favor.

2. <u>Defendant Blair</u>

Plaintiff also contends that Defendant Blair retaliated against him when Defendant Blair selected Plaintiff for transfer to another institution. Defendant Blair, however, has submitted evidence showing that he did *not* select Plaintiff for the special transfer plan. Doc. [130] ¶ 15. Defendant Blair's evidence shows that he delegated to a subordinate employee the task of identifying the twenty honor offenders at PCC for transfer. *Id.* ¶ 14. Since Defendants produced evidence negating an essential element of Plaintiff's claim, *see*

---

[4] The Eighth Circuit has stated in dicta that "[t]he right to be free from retaliation for availing one's self of the prison grievance process has been clearly established in this circuit for more than twenty years." *Santiago*, 707 F.3d at 991. While this broad general proposition is true, that does not mean it is "clearly established" in the qualified immunity sense of the phrase. *See Reichle v. Howards*, 566 U.S. 658, 665 (2012) ("[T]he right in question is not the general right to be free from retaliation for one's speech . . . ."); *see also Matson v. Hrabe*, 612 F. App'x 926, 930 (10th Cir. 2015) (noting a "clearly established right not to be subjected to retaliation for filing grievances" is too much of a "broad general proposition" not sufficiently "particularized" for purposes of qualified immunity); *Banks v. Hawkins*, 999 F.3d 521, 532 (8th Cir. 2021) (Stras, J., dissenting) ("The Supreme Court has told us over and over again that any generalized right . . . must be clearly established in a particularized sense to overcome qualified immunity." (cleaned-up)).

*Bedford*, 880 F.3d at 996, Plaintiff was required to "'respond by submitting evidentiary materials' of specific facts showing the presence of a genuine issue for trial," *id.* at 997 (quoting *Torgerson*, 643 F.3d at 1042).  Plaintiff did not do so.

In his Response to Statement of Material Facts, the only evidence Plaintiff cites to dispute Defendant Blair's evidence is Plaintiff's unsworn declaration.  *See* Doc. [147] 14–15 (citing Doc. [147-1]); *see also supra* n.2.  But even if Plaintiff's declaration were properly signed under penalty of perjury, Defendant Blair still would be entitled to summary judgment.  Plaintiff has no personal knowledge about these facts and points to nothing else in the record that contradicts Defendant Blair's evidence.  For that reason, Plaintiff has failed to meet his burden under Rule 56(c)(1)(A) to identify evidence in the record that Defendant Blair selected Plaintiff for transfer to PCC.[5]  As such, summary judgment is appropriate for the retaliatory transfer claim against Defendant Blair.

Moreover, Defendant Blair, like Defendant Savage, would be entitled to qualified immunity.  Just as it was not clearly established that a threat of transfer, without more, was sufficiently chilling, it likewise was not clearly established that the transfer itself of an inmate to another facility, without more, would chill a person of ordinary firmness from

---

[5] Because Plaintiff failed to show that Defendant Blair even selected Plaintiff for transfer, he necessarily failed to show that Defendant Blair would not have transferred Plaintiff but for his use of the inmate grievance process.  Plaintiff faced "a substantial burden in attempting to prove that the actual motivating factor for his transfer was as he allege[d]," and he failed to meet it.  *See Murphy*, 769 F.2d at 503 n.1 (quoting *McDonald v. Hall*, 610 F.2d 16, 18 (1st Cir. 1979)); *see also Cornell v. Woods*, 69 F.3d 1383, 1387–88 (8th Cir. 1995).  Given the unrebutted evidence that Defendants submitted of the special transfer plan of forty inmates, Plaintiff failed to show a reasonable jury could find that he would not have been transferred but for his use of the grievance process.  *See Ponchik v. Bogan*, 929 F.2d 419, 420 (8th Cir. 1991) (concluding that while inmate's two lawsuits against prison officials were "clearly a factor in requesting his transfer," his retaliation claim failed since the record showed his transfer "would have been requested, even had he not filed the lawsuits").

continuing to use the prison grievance process. While the Eighth Circuit has long recognized that "a prisoner cannot be transferred in retaliation for the exercise of a constitutional right," *Goff*, 7 F.3d at 737, it consistently has held that an individual has a claim for retaliation under the First Amendment if, and only if, the adverse action taken against him would chill a person of ordinary firmness. Thus, an inmate does not automatically have a viable retaliation claim merely because he was transferred in retaliation for the exercise of a constitutional right. *See Holleman*, 951 F.3d at 881 ("A transfer that objectively improves the prisoner's condition, for example, would not deter a person of ordinary firmness from engaging in protected activity."). Plaintiff has not pointed to, and this Court has not located, a case clearly establishing that transferring an inmate from one institution to another, without more, would chill a person of ordinary firmness from continuing to exercise his First Amendment right to use the prison grievance process. *See Matson*, 612 F. App'x at 930. Therefore, Defendant Blair is also entitled to qualified immunity.

## CONCLUSION

Plaintiff failed to point to evidence in the record showing that Defendant Savage's question was a threat or that his question, even if construed as a threat, would be sufficiently chilling to be actionable under the First Amendment. In addition, Plaintiff failed to point to evidence in the record that showed Defendant Blair was the one that chose to transfer Plaintiff to a different institution, let alone that Plaintiff's IRR motivated Defendant Blair to transfer Plaintiff. Furthermore, both Defendants are entitled to qualified immunity because Plaintiff did not point to, and the Court did not find, anything that clearly

established that transferring or threatening to transfer an inmate to another unspecified institution, without more, would sufficiently chill a person of ordinary firmness from continuing to use a prison grievance system and thereby amount to actionable retaliation under the First Amendment.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment, Doc. [128], is **GRANTED**.

An appropriate Judgment will be entered here with in accordance with Federal Rule of Civil Procedure 58(a).

Dated this 24th day of October 2024.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE